IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAURICE LEVON BIGELOW, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:13CV490 |
| | ) |
| KIERAN J. SHANAHAN, | ) |
| | ) |
| | ) |
| Respondent. | ) |

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 3, Amended Petition.)[1] Respondent has filed a Motion to Dismiss on Statute of Limitations Grounds (Docket Entry 7) and Initial Answer (Docket Entry 6). Petitioner was notified (Docket Entry 9) of his right to reply to the Respondent's Motion to Dismiss (Docket Entry 7) and he filed a number of documents essentially contending that the limitations period does not apply to his case because he is not subject to AEDPA given that he is a "Moor." (Docket Entries 10, 11, and 12).

### Background

On October 14, 2008, Petitioner pled guilty in Superior Court, Guilford County to robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury, in cases 07 CRS 107674 and 04 CRS 107675. (Docket Entry 3, §§ 1-6.) He was sentenced

---

[1] Petitioner filed his Section 2254 petition on June 19, 2013 and it was signed on June 14, 2013. (Docket Entry 1.) That same day he also filed an Amended Petition, also signed on June 14, 2013. (Docket Entry 3.) In some instances, the filing of an amended Section 2254 petition could plausibly have an impact on the limitations analysis. However, because both the Petition and the Amended Petition were signed and filed on the same day, the Court need not consider this matter further.

to consecutive terms of 96-125 and 42-60 months of imprisonment. (*Id.* § 3.) Petitioner did not file a direct appeal. On January 11, 2012, Petitioner filed a Motion for Appropriate Relief ("MAR") in Superior Court, Guilford County, which was denied on March 27, 2012. (Docket Entry 3, §§ 10-11(a); Docket Entry 8, Exs. 4-5.)[2] Petitioner then filed a petition for a writ of certiorari with the North Carolina Court of Appeals on December 4, 2012 and it was denied on December 18, 2012. (Docket Entry 3, § 11(b); Docket Entry 8, Exs. 6 and 8.) Next, Petitioner filed a habeas petition with the Supreme Court of North Carolina on March 13, 2013, which was denied on March 15, 2013. (Docket Entry 3, § 11(c); Docket Entry 8, Ex. 9; Docket Entry 1 at 19.) On April 15, 2013, Petitioner filed a federal habeas petition in this Court, which was dismissed without prejudice on June 12, 2013 for failure to use the proper § 2254 forms. *Bigelow v. Young*, No. 1:13CV377 (M.D.N.C. June 12, 2013). Petitioner filed this action on June 19, 2013; it was signed as of June 14, 2013. (Docket Entry 3.)

## Petitioner's Claims

Petitioner contends: (1) that he was not sentenced in accordance with his plea agreement, (2) that the trial court incorrectly calculated the points regarding his prior record level, (3) that his guilty plea was not made voluntarily and with an understanding of the charges and consequences of the plea, and (4) that he has newly discovered evidence insofar as he did not realize that he received consecutive sentences until he was told by his case manager upon arriving at prison. (*See id.* § 12.)

---

[2] Respondent correctly points out that Petitioner filed along with his MAR a motion for a transcript. (Docket Entry 8 at 1, Ex. 5.) This motion was denied along with the denial of his MAR. (*Id.*)

2

## Discussion

Respondent requests dismissal on the ground that the Amended Petition was filed[3] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (Docket Entry 7.) In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period *begins to run from* the latest of several potential starting dates:
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review*;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[3] "In [*Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379 (1988)], the Supreme Court held that a pro se prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." *Morales–Rivera v. United States*, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." *Id.* at 110–11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. *See Allen v. Mitchell*, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. *Cf. United States v. Torres*, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); *but see Smith v. Woodard*, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that *Houston*'s rule governed filing date of § 2254 petition); *Ostrander v. Angelone*, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Amended Petition (*i.e.*, the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Green v. Johnson*, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added). The record does not reveal any basis for concluding that subparagraphs (B) and (C) of § 2244(d)(1) apply here.

Under subparagraph (A), Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Court must therefore ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended. Here, Petitioner pled guilty and judgment was entered on October 14, 2008. (Docket Entry 8, Exs. 1-2.) Respondent contends that because Petitioner had no right of appeal, his judgment became final that day. (*Id.* at 3-4.) However, the Court need not consider or resolve this issue because even assuming Petitioner had a right to direct appeal, he never pursued this right. Thus, the period to file notice of appeal would have expired fourteen days later on October 28, 2008, and a fourteen day difference in the limitations analysis is immaterial here as will be made clear below. *See* N.C. R. App. P. 4(a)(2) ("Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal by . . . filing notice of appeal with the clerk of superior court . . . within fourteen days after entry of the judgment."). The undersign will therefore use the latter of these two dates, October 28, 2008. Petitioner's federal habeas deadline therefore began running on October 28, 2008. Absent some form of tolling, it expired one year later in late October of 2009. However, Petitioner did not file the

4

instant action until, at the earliest, June 14, 2013. Consequently, the instant action is at least three-and-a-half years late.

It is true that the instant action would have been subject to statutory tolling if Petitioner had a properly filed post-conviction petition pending in state court during the one-year limitations period. 28 U.S.C. § 2244(d)(2); *see Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999) (state collateral filings generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)"). However, statutory tolling does not apply here because none of Petitioner's state post-conviction proceedings were pending during the limitations period. In other words, Petitioner's time to file in this Court expired before he made any state court filings. Filings made after the limitations period has ended do not revive or restart it. *Minter v. Beck*, 230 F.3d 663, 665 (4th Cir. 2000). Here, Petitioner filed his MAR on January 11, 2012 in Superior Court and the North Carolina Court of Appeals ultimately declined to review the Superior Court's denial of Petitioner's MAR on December 18, 2012. Petitioner also filed a habeas Petition with the Supreme Court of North Carolina on March 13, 2013, which was denied on March 15, 2013. Thus, all of Petitioner's state post-conviction efforts were filed at least two to three years *after* the federal habeas deadline had expired in late October 2009. Petitioner did file a prior federal habeas petition with this Court on April 15, 2013, however, that does not entitle Petitioner to statutory tolling. *See Duncan v. Walker*, 533 U.S. 167, 172-75, 121 S.Ct. 2120 (2001) (concluding that unlike filing of state habeas petition, filing of federal habeas petition does not toll limitations statute).

5

One of Petitioner's claims—specifically, the claim that he did not know his sentences ran consecutively until he arrived at prison and spoke with his case manager—may arguably implicate subparagraph (D).[4] (Docket Entry 3, § 12, Ground Four.) *See* 28 U.S.C. § 2244(d)(1)(D) (stating that a Petitioner may file an application for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). However, any argument referencing subparagraph (D) ultimately fails for at least two reasons. First, Petitioner has not pointed to newly discovered evidence. Petitioner either knew—or should have known—by reviewing his October 14, 2008 Judgment and Commitment forms that his sentences would be served consecutively. (*See* Document Entry 8, Ex. 2 at 3 (Petitioner's October 14, 2008 Judgment and Commitment forms indicating that his sentences were to be served consecutively)).

Second, even assuming Petitioner did not know of his consecutive sentences until learning from his case manager and seeking additional information from the Superior Court

---

[4] Petitioner's allegation, in pertinent part, reads as follows:

> It was only after applicant had been sentenced to what he had thought was agreed upon in the plea agreement between the prosecutor and his lawyer before the Court questioned him concerning the plea. The answers given to the questions asked are true. Applicant was not one of those to receive a copy of any of the documents entered into the Court's records. Applicant discovered he was sentenced to consecutive terms of imprisonment by his prison case manager. He immediately contacted the Clerk's Office requesting the records. It was then that applicant discovered through court records that evidence exist[s] to support that no concurrent term of imprisonment was ordered in these cases. The word consecutive was stricken. The Court sentenced applicant to consecutive sentences.

(Docket Entry 3, § 12, Ground Four.)

6

Clerk of Court, this claim is still time barred. Petition arrived at prison on October 21, 2008. (Docket Entry 8, Ex. 13 at 1.) He waited until January of 2012 to file any state post-conviction proceedings and waited until June of 2013 to file his Amended Petition. Even assuming it took Petitioner some period of time to undertake the due diligence necessary to learn the true nature of his sentencing and thereby trigger the onset of the federal habeas deadline under subparagraph (D), no reasonable measure of due diligence under these circumstances could account for this gap in time.[5] This claim is also time-barred.

Petitioner does not dispute the foregoing time-line. Instead, he essentially argues that the limitations period does not apply to his case because he is neither subject to AEDPA, nor subject to this Court's jurisdiction, given that he is a "Moor." (Docket Entry 3, § 18.) This argument fails. The United States has not recognized the so-called "Moorish Nation" as a sovereign and therefore Petitioner is not entitled to any privileges in this regard. *See, e.g.*, *El–Bey v. United States*, No. 1:08CV151, 2009 WL 1019999, *1 (M.D.N.C. Jan. 26, 2009) (citations omitted); *United States v. $7,000.00 in United States Currency*, 583 F. Supp .2d 725 (M.D.N.C. 2008) (citations omitted). And, in any event, Petitioner's nationality is immaterial to the limitations analysis. This line of argumentation is frivolous.[6]

---

[5] For example, assuming it took Petitioner one year from the date he entered prison on October 21, 2008 to ascertain the true nature of his sentencing (which exceeds any reasonable period to conduct due diligence under these circumstances) this claim remains time barred. This is because even if the onset of the federal habeas deadline was statutorily tolled under subparagraph (D) until late October 2009, and then ran through late October 2010, Petitioner still waited until January of 2012 to file state post-conviction proceedings and waited until June of 2013 to file his Amended Petition.

[6] This frivolous line of argumentation also includes three additional documents Petitioner filed on September 20, 2013 in response to the Respondent's Motion to Dismiss. (Docket Entry 7.) First, Petitioner filed a "Legal Notice Name Declaration/Correction/Proclamation and Publication." (Docket Entry 10.) In this document, Petitioner appears to claim affiliation with the "Moorish Nation," declares that he will henceforth be referred to as "Maurice L. Bigelow-Bey," and makes a

7

Finally, the United States Supreme Court has recognized that the doctrine of equitable tolling applies to the time bar set forth in Section 2244. *Holland v. Florida*, ___ U.S. ___, ___, 130 S.Ct. 2549, 2562 (2010). Equitable tolling may excuse an otherwise untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005)). Nevertheless, Petitioner has not made any equitable tolling argument and none is apparent on the face of the pleadings. To the extent Petitioner seeks equitable tolling based on his claim of newly discovered evidence, or based on being a purported member of the "Moorish Nation," these arguments fail as well for the reasons stated above. In the end, Petitioner is not entitled to equitable tolling, his Petition was filed out of time, and Respondent's Motion to Dismiss should be granted. An evidentiary hearing in this matter is not warranted.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 7) be **GRANTED**, that the Amended Petition (Docket Entry 3) be **DISMISSED**, and that Judgment be entered dismissing this action.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
October 7, 2013

---

number of statements in line with his overall argument, described above. (*Id.* at 1.) Second, Petitioner filed a document entitled "Notice of Public Records Correction," in which he requests that all records be "corrected" to reflect this name change. (Docket Entry 11.) Third, Petitioner also filed a document entitled "Avernment of Jurisdiction," in which he again seems to be making the case, this time in much greater length, that he is not subject this Court's jurisdiction or at least that he is not subject to AEDPA. (Docket Entry 12.) The undersigned has reviewed these documents. They are immaterial to the limitations analysis.

8